1
2
3
4

5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7   JOHN EDWIN ERICKSON,

8                          Petitioner,          Case No. C15-0985-RAJ-MAT

9            v.

10   JEFFREY UTTECHT,                            REPORT AND RECOMMENDATION

11                          Respondent.

12

13                  INTRODUCTION AND SUMMARY CONCLUSION

14          This is a federal habeas action brought under 28 U.S.C. § 2254.  Petitioner John Erickson

15   challenges in his petition a 2010 judgment and sentence of the King County Superior Court.[1]

16   Respondent has filed an answer to the petition together with relevant portions of the state court

17   record.  Petitioner requested and was granted additional time to file a response to respondent's

18   answer, but ultimately elected not to do so.  This Court, having reviewed petitioner's federal

19   habeas petition, respondent's answer, the trial transcript, and the balance of the record, concludes

20   that petitioner's federal habeas petition should be denied and this action should be dismissed

21   with prejudice.

22

23          _____

            [1]  Petitioner filed the instant habeas action while he was confined at the Coyote Ridge Corrections Center in
     Connell, Washington pursuant to the challenged judgment.  Petitioner has since been released from custody.

REPORT AND RECOMMENDATION
PAGE - 1

FACTUAL/PROCEDURAL HISTORY

The Washington Court of Appeals, on direct appeal, summarized the facts underlying petitioner's conviction as follows:

In November 2008, when JS was five years old, she lived with John Erickson, his wife Riana, their two young children, and Shaun, Erickson's adult son from a previous relationship.[2]   Shaun is the former long-term boyfriend of Lindsey Smith, JS's mother.  While not JS's biological father, Shaun has treated JS as his daughter since she was born.  Erickson and Riana took care of JS when she was not in school and Shaun was working.

Smith's mother, Karen Vangog often looked after JS on weekends.  One day around this time, while Vangog was bathing her, JS said, "Papa John showed me how to have a baby."  4 Report of Proceedings (RP) (May 5, 2010) at 639.  Vangog asked how he did that, and JS said, "[H]e got on top of me."  4 RP (May 5, 2010) at 640.  Vangog told Smith about what JS had said but took no further action.

When Shaun returned home midday on November 15, 2008, he did not see JS with other family members in the living area and went up to the bedroom he shared with JS.  The bedroom door was closed, and when he opened it, Shaun discovered JS watching one of his pornographic films.  Shaun turned it off and told JS that what she was watching was not appropriate for children.  JS appeared to be "confused" and responded, "Why is that, Daddy?  Me and Papa John do stuff like that."  3 RP (May 4, 2010) at 432, 437.  Shaun asked JS what she meant by "stuff" and she said "stuff like what she saw on TV."  3 RP (May 4, 2010) at 438.  Shaun also asked, "[A]re you sure you mean Papa John?" and JS said, "'Yes, Daddy, Papa John.'"  3 RP (May 4, 2010) at 438.

Several months later, a child interview specialist interviewed JS and JS eventually told the interviewer that "Pepper John" did some "bad things" and told her it was a "secret."  Ex. 14, at 5, 11, 18.  She described a "pee pee thing" where "he rubs the pee pee and then you rub and the seeds come out."  Ex. 14, at 25.  JS said this happed [sic] in Erickson's bedroom while she was lying on the bed in her underwear with her clothes off so they would not get "all seedy."  Ex. 14, at 28.  She recounted that "Pepper John" was standing beside the bed, unzipped his zipper, and that his "pee pee" was "just like a stick."  Ex. 14, at 27.  She said he used his hand to rub himself and "seeds . . . squirt out" and she felt the "seeds" on her "pee pee."  Ex. 14, at 31.  JS said it happened more than one time.

---

[2]  [Court of Appeals footnote 1]  Because several family members share the same last name, we refer to John Erickson as "Erickson" and Shaun and Riana Erickson by their first names to avoid confusion.

REPORT AND RECOMMENDATION
PAGE - 2

1       The State charged Erickson with one count of child molestation in the first
2   degree.  After a hearing, the court determined that JS was competent to testify.  At
    trial, JS reluctantly testified that "Papa John" touched his "private," touched her
3   body with his "private part," and that "white stuff" came out and got on her
    private part.  3 RP (May 4, 2010) at 527, 529.

4       Several witnesses testified about statements Erickson made over the years
    about children and sex.  According to Shaun, his father expressed the view that
5   people, specifically girls, "should experience sex as young as they can."  3 RP
    (May 4, 2010) at 427.  A family friend, Shannon Casey, recalled a conversation in
6   which she told Erickson that she lost her virginity before she was thirteen years
    old, which she believed was a detrimental experience.  Erickson responded, "Well
7   I want my daughter to experience sex as soon as possible."  6 RP (May 10, 2010)
    at 899.  Casey told Erikson [sic] that she thought thirteen was nevertheless "a
8   little young."  6 RP (May 10, 2010) at 899.  Erickson looked at her and reiterated,
    "As soon as possible."  6 RP (May 10, 2010) at 899.  Vangog also testified that
9   Erickson told her on one occasion that "kids should learn about sex early on and
    the younger they are, the better."  4 RP (May 5, 2010) at 635.

10      The trial court also admitted evidence of several prior alleged acts.  Casey
11  testified about one time when she visited Erickson's house and he was upstairs
    bathing three children, including JS and his own three-year-old daughter.  When
12  Erickson emerged from the bathroom with the children, he was clothed, but his
    hair and beard were wet.  Another time when Casey visited, Erickson was bathing
13  his daughter and JS.  Casey opened the door and saw that Erickson was wet and
    naked, although Casey could only see him from the waist up.

14      Another witness, Karen Skaggs, testified about a different bathtub incident
15  and about Erickson's views on sexuality and children.   Skaggs was in a
    relationship with Erickson and lived with him between 2000 and 2002.   She
16  testified that over the course of the relationship, Erickson made numerous
    comments about the propriety of exposing children to sex that made her
17  increasingly uncomfortable about his views.  Skaggs also testified that each year
    in the summer, Erickson's daughter from a prior relationship, BS,[3] visited from
18  Arizona.  One time when BS was about five or six, Skaggs returned from the
    grocery store to find the bathroom door locked.  When Erickson eventually
19  opened the door for Skaggs, BS was in the bathtub and he was wet and wearing
    only a towel.  Skaggs later confronted Erickson and he said he "was just having a
20  bath with her; that it was very natural; that [it] was important that young girls see
    their fathers naked; that they learn sexuality from their parents."  6RP (May 10,
21  2010) at 836.

22

23      [3]  [Court of Appeals footnote 2]  Although the limiting instruction and the briefs refer to "B.E.," according
    to Erikson's [sic] testimony, his daughter's initials are "B.S."

REPORT AND RECOMMENDATION
PAGE - 3

Skaggs also testified that she moved out of Erickson's home after finding some "images" on his computer.  6 RP (May 10, 2010) at 845.  Following this discovery, Skaggs said she became "fairly hysterical" and confronted him.  6 RP (May 10, 2010) at 849.  According to Skaggs, Erickson at first denied knowing anything about the images, but then admitted they were his, insisted it was a "natural thing" and mentioned the organization "NAMBLA" (North American Man/Boy Love Association).  Skaggs said that eventually Erickson cried and begged her not to do anything.[4]

The State argued pretrial that the bathing incidents evidence was admissible as evidence of a common scheme or plan.  Erickson maintained that the incidents were not relevant to the allegations raised by JS.  The court ruled that the bathing incidents showed a "common plan or scheme with respect to attempting to gain access to young girls, to engage in grooming type activity with respect to young girls, and to have access to them for improper purposes" and that the evidence was more probative than prejudicial.  1 RP (Apr. 22, 2010) at 86.  The court did not rule, however, that evidence of possession of pornography was admissible as common scheme or plan evidence.  Concerned about the inflammatory nature of this evidence, the court determined that Skaggs's testimony should be "sanitized" and she could testify only that she saw some images as a means to explain the conversation that followed.  1 RP (Apr. 22, 2010) at 85.  The court determined that what Erickson said in response to Skaggs after she made the discovery was "highly probative" and admissible.  1 RP (Apr. 22, 2010) at 83.

Following both Skaggs's and Casey's testimony, the court gave oral limiting instructions, cautioning the jury that Erickson was not on trial for any conduct that was not charged in the information, that evidence of prior bad acts was, on its own, not sufficient to prove that the defendant committed the charged crime, and that the State had the burden to prove each element of the crime.  The court also provided the jury with a similar written instruction on the bathing evidence.[5]

Erickson testified and denied molesting JS.  He disavowed the beliefs

---

[4] [Court of Appeals footnote 3] In addition to excluding evidence of the nature of the images, the court also excluded Skaggs's testimony that she reported the incident to the police.

[5] [Court of Appeals footnote 4] The written instructions instructed the jury as follows:

"Certain evidence has been admitted in this case only for a limited purpose.  This evidence may be considered by you for the purpose of determining whether or not the defendant had a common scheme or plan with regard to exposing young girls to sex and/or whether the defendant had a lustful disposition toward J.S.  You may not consider it for any other purpose.  Any discussion of the evidence during your deliberations must be consistent with this limitation.

"This instruction applies to the testimony presented by Ms. Karen Roblee-Skaggs regarding finding the defendant in the bathroom with his daughter, B.E.

"This instruction also applies to the testimony presented by Ms. Shannon Casey regarding finding the defendant in the bathroom with J.S."

REPORT AND RECOMMENDATION
PAGE - 4

about sexuality and children as testified to by Shaun, Skaggs, Casey, and Vangog. He claimed that JS was exposed to extensive amounts of pornography and her allegations described what she viewed, rather than what she experienced.

In closing, the State told the jury that the significance of the evidence of the bathing incidents was to determine whether the evidence showed a common scheme or plan for the "purpose of exposing children to sex." 7 RP (May 12, 2010) at 1077. The prosecutor did not mention Erickson's possession of pornography or disturbing images.

The jury found Erickson guilty of the charge, and the court imposed an indeterminate sentence with a minimum term of 68 months and a maximum term of life.

(Dkt. 19, Ex. 16 at 1-7.)

Petitioner appealed his conviction to the Washington Court of Appeals. (*See id.*, Exs. 11, 15.) Petitioner's appellate counsel filed an opening brief challenging the trial court's admission of certain evidence and its imposition of certain conditions of community custody. (*See id*, Ex. 11.) Petitioner thereafter filed a pro se statement of additional grounds asserting multiple additional grounds for review including claims of a *Brady* violation, ineffective assistance of counsel, prosecutorial misconduct, unlawful search, trial court error, and cumulative error. (*See id.*, Ex. 15.) On April 2, 2012, the Court of Appeals issued an unpublished opinion affirming petitioner's conviction, but remanding the matter to the trial court for purposes of striking conditions of community custody which the state conceded were invalid. (*Id.*, Ex. 16.)

On April 18, 2012, petitioner filed a *pro se* motion for an extension of time to file a motion for reconsideration of the Court of Appeals' decision. (*Id.*, Ex. 17.) On April 19, 2012, petitioner's appellate counsel filed a motion to modify the Court of Appeals' opinion, asking that petitioner's name be stricken from the opinion and that his initials be substituted for his full name. (*Id.*, Ex. 18.) Petitioner filed a *pro se* motion for reconsideration on April 30, 2012. (*Id.*, Ex. 19.) On May 1, 2012, the Court of Appeals issued an order denying petitioner's motion to

REPORT AND RECOMMENDATION
PAGE - 5

1    extend time and his motion to modify the Court of Appeals' opinion.  (Dkt. 19, Ex. 20.)

2         Petitioner next sought review in the Washington Supreme Court.  (*See id*., Exs. 21-24.)

3    Petitioner identified seven grounds for review in his *pro se* petition to the Supreme Court:  (1) &

4    (2) the trial court erred in admitting prior bad act evidence; (3) the state suppressed and

5    destroyed exculpatory evidence; (4) trial counsel rendered ineffective assistance; (5) the

6    prosecutor committed misconduct during questioning of a prosecution witness and in closing

7    argument; (6) the trial court erred in finding the victim competent to testify; and (7) the search of

8    petitioner's home was illegal.  (*Id*., Ex. 24.)

9         Petitioner thereafter filed a series of statements of additional authorities pursuant to Rule

10   10.8 of the Washington Rules of Appellate Procedure (RAP), a total of 13 in all.  (*See id*., Exs.

11   25, 28, 31-41.)  The Supreme Court denied review without comment on October 9, 2012, and the

12   Court of Appeals issued its mandate terminating direct review on January 4, 2013.  (*Id*., Exs. 42,

13   43.)  On February 26, 2013, the King County Superior Court entered an order striking the invalid

14   conditions of community custody in accordance with the mandate of the Court of Appeals.  (*Id*.,

15   Ex. 44.)

16        On December 19, 2013, petitioner filed a personal restraint petition in the Washington

17   Court of Appeals.  (*See id*., Exs. 45, 46.)  Petitioner identified ten grounds for relief in his

18   personal restraint petition:  (1) the Department of Corrections interfered with his efforts to access

19   the courts on direct appeal and in his personal restraint proceedings; (2) the trial court violated

20   petitioner's right to confront witnesses by excluding testimony about an incident in which the

21   victim may have been touched by a classmate at school; (3) the trial court and the prosecutor

22   violated petitioner's due process rights when they suppressed, and caused the destruction of,

23   exculpatory and/or impeaching evidence; (4) petitioner's counsel and the public defender's

REPORT AND RECOMMENDATION
PAGE - 6

office violated petitioner's constitutional rights when they denied funding for a Special Sex Offender Sentencing Alternative (SSOSA) evaluation; (5) the trial court, prosecutor, and petitioner's trial counsel violated petitioner's constitutional rights when they failed to inform him of the nature and cause of the accusation against him; (6) the trial court, prosecutor, and petitioner's trial counsel violated petitioner's right to confront witnesses by allowing Karen Skaggs to testify about excluded hearsay statements; (7) petitioner's trial and appellate counsel rendered ineffective assistance; (8) the prosecutor committed misconduct; (9) the trial judge committed misconduct; and (10) cumulative error prejudiced petitioner.  (Dkt. 19, Ex. 45 at 2-4.) The Court of Appeals issued an Order dismissing petitioner's personal restraint petition on March 28, 2014.  (*Id.*, Ex. 47.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court in which he asserted nine of the ten grounds raised in his personal restraint petition, omitting only his cumulative error claim.  (*See id.*, Ex. 48.)  On March 12, 2015, the Supreme Court Commissioner issued a ruling denying review.  (*Id.*, Ex. 49.)  Petitioner filed a motion to modify the Commissioner's ruling and that motion was denied as well.  (*Id.*, Exs. 50, 53.)  The Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on July 10, 2015.  (Dkt. 19, Ex. 54.)  Petitioner now seeks federal habeas review of his conviction.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies the following ten grounds for relief in his federal habeas petition:

GROUND ONE:     Petitioner's rights to access to the Courts, redress of grievances, due process, self-representation, and equal protection defined in the First, Sixth, and Fourteenth Amendments to the U.S. Constitution were violated while he attempted to appeal his conviction.

GROUND TWO:     Petitioner's right to confront witnesses and due process rights defined in the Fifth, Sixth, and Fourteenth Amendments to the U.S.

REPORT AND RECOMMENDATION
PAGE - 7

Constitution were violated when the trial court refused to allow testimony regarding [D.S.]

GROUND THREE:   Petitioner's due process rights guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution were violated when exculpatory and impeaching evidence was not only suppressed, but willfully destroyed.

GROUND FOUR:   Petitioner's rights to assistance of counsel, due process and equal protection guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution were violated when funding for a SSOSA evaluation was denied by the public defenders office (PDO).

GROUND FIVE:   Petitioner's right to protection from double jeopardy and to be informed of the nature and cause of the accusation against him guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution were violated when he was never informed of the act or acts he was accused and/or convicted of.

GROUND SIX:   Petitioner's rights to due process and confrontation guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution were violated when Karen Skaggs testified about hearsay that she was instructed not to discuss and implied an accusation of a prior bad act.

GROUND SEVEN:   Petitioner's right to due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution were violated when Karen Skaggs testified about sexually explicit images she allegedly found on Petitioner's shared computer because they were improper evidence of a common scheme or plan.

GROUND EIGHT:   Petitioner's rights to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution were violated when his trial attorneys and his appellate attorney were ineffective.

GROUND NINE:   Petitioner's right to due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution was violated when the prosecutor committed misconduct.

GROUND TEN:   Petitioner's right to due process guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution was violated when the Judge committed misconduct.

(Dkt. 4 at 6, 13, 19, 28, 32, 36, 44, 46-47, 55, 59.)

/ / /

REPORT AND RECOMMENDATION
PAGE - 8

DISCUSSION

Respondent concedes that petitioner properly exhausted his federal habeas claims by fairly presenting them to the Washington Supreme Court as federal claims in his petition for review on direct appeal and/or in his motion for discretionary review on collateral review. Respondent argues, however, that petitioner is not entitled to relief with respect to any of the claims asserted in his federal habeas petition.

Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

REPORT AND RECOMMENDATION
PAGE - 9

of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1400, 1415 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>Ground One: Access to Courts</u>

Petitioner asserts in his first ground for relief that his constitutional right to access the courts was violated while he attempted to appeal his conviction in the state courts. (Dkt. 4 at 6.) Petitioner complains that he was granted an insufficient amount of time in the prison law library to prepare a pro se statement of additional grounds and a motion for reconsideration for submission to the Court of Appeals on direct appeal. (*Id*. at 6-7.) He also complains that a law library employee destroyed a statement of additional authorities petitioner had prepared for submission to the Washington Supreme Court, and that she also punished him for printing the

REPORT AND RECOMMENDATION
PAGE - 10

1   document in the first place by denying him permission to print anything else in the law library

2   for two weeks.  (Dkt. 4 at 8-9.)

3       Petitioner complains as well that he was denied priority access to the law library for

4   purposes of preparing his personal restraint petition which prevented him from researching

5   claims for his personal restraint petition and subsequently limited the amount of time he had

6   available to file the instant habeas petition.  (*Id*. at 9.)  Finally, petitioner complains that the

7   facility at which he was incarcerated enacted policies which reduced the "capabilities" of the law

8   library including (1) replacing Lexis with Westlaw, (2) removing printers and typewriters, and

9   (3) charging a fee for printed copies of case law.  (*Id*. at 11-12.)  Petitioner contends that if he

10   had been granted priority access to the law library, and if the capabilities of the library had not

11   been changed, he could have created a more persuasive personal restraint petition and a more

12   persuasive habeas petition.  (*Id*. at 12.)

13       To the extent petitioner complains about interference with his right to prosecute his direct

14   appeal, he has not established any violation of a constitutional right.  The United States

15   Constitution does not require states to provide appellate review of convictions.  *See Halbert v.*

16   *Michigan*, 545 U.S. 605, 610 (2005).  However, when a state provides an appellate review

17   procedure, that procedure must "affor[d] adequate and effective appellate review to indigent

18   defendants."  *Smith v. Robbins*, 528 U.S. 259, 276 (2000) (quoting *Griffin v. Illinois*, 351 U.S.

19   12, 20 (1956)).  "A State's procedure provides such review so long as it reasonably ensures that

20   an indigent's appeal will be resolved in a way that is related to the merits of the appeal.  *Smith*,

21   528 U.S. at 276-77 (collecting cases).  Indigent defendants have a constitutional right to counsel

22   on direct appeal from a criminal conviction, a right which arises under the Fourteenth

23   Amendment.  *Douglas v. California*, 372 U.S. 353, 357-58 (1963).  They do not, however, have

REPORT AND RECOMMENDATION
PAGE - 11

a right to self-representation on direct appeal. *Martinez v. Court of Appeal*, 528 U.S. 152 (2000).

The record before this Court makes clear that petitioner was represented by counsel in his direct appeal and that appellate counsel filed an opening brief on petitioner's behalf. Though petitioner had no federal constitutional right to represent himself in those proceedings, he availed himself of Washington RAP 10.10 which permits a defendant to file a pro se statement of additional grounds on direct appeal to identify issues the defendant believes have not been adequately addressed in the brief filed by counsel. The Court of Appeals considered the merits of the claims properly before it on direct review, including claims asserted by petitioner in his statement of additional grounds. (*See* Dkt. 19, Ex. 16.) Petitioner identifies no constitutional infirmity in this process.

Petitioner also complains about having inadequate time to file a motion for reconsideration on direct appeal. However, Washington RAP 12.4, which governs motions for reconsideration, contains no provision permitting pro se filings and petitioner was still represented by counsel at that point in the appeal process. This alleged deficiency in the appeal process therefore does not implicate federal constitutional concerns. Finally, petitioner complains that the law librarian at his institution destroyed a statement of additional authority which he claims he intended to file with the Washington Supreme Court on discretionary review of the Court of Appeals' decision on direct review, and that the librarian thereafter refused to print documents for him. However, these alleged misdeeds occurred after the Supreme Court had already dismissed his petition for review on direct appeal. This complaint is therefore frivolous.

To the extent petitioner complains about interference with his ability to pursue post-conviction review his claim also fails. Post-conviction relief is not a part of the underlying

REPORT AND RECOMMENDATION
PAGE - 12

criminal proceeding but is actually civil in nature.  *Pennsylvania v.* Finley, 481 U.S. 551, 556-57 (1987).  Accordingly, petitioner's assertions of error arising out of the state post-conviction proceedings do not constitute an attack on petitioner's detention and, thus, are not proper grounds for federal habeas relief.  *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989).  *See also*, *Ortiz v. Stewart*, 149 F. 3d 923, 939 (9th Cir. 1998) (citing *Carriger v. Stewart*, 95 F.3d 755, 763 (9th Cir. 1996), *vacated on other grounds*, 132 F.3d 463 (1997)).

Even assuming petitioner had presented a viable constitutional claim related to his court access, the Washington Court of Appeals reasonably rejected petitioner's access to courts claim on collateral review:

> Although Erickson describes some difficulty, he was able to secure an extension and submit a statement of additional grounds in support of his direct appeal.  He was also able to produce a lengthy, extensively researched and timely personal restraint petition.  In short, while Erickson is clearly dissatisfied with the extent of access to legal materials at CRCC and offers practical suggestions for improvements, he is unable to demonstrate that the access is constitutionally insufficient because he cannot demonstrate that he suffered any actual injury to pending or contemplated litigation.

(Dkt. 19, Ex. 47 at 11-12.)  This conclusion is amply supported by the record before this Court.  Finally, this Court notes that petitioner's submissions in this proceeding were voluminous and his claims appear to have been well researched, thus undermining any suggestion that he was prejudiced by the alleged limitations in his ability to access legal materials at his place of incarceration.  Petitioner's federal habeas petition should be denied with respect to his first ground for relief.

<u>Ground Two:  Cross-Examination</u>

Petitioner asserts in his second ground for relief that his rights to due process and to confront witnesses against him were violated when the trial court refused to allow testimony

REPORT AND RECOMMENDATION
PAGE - 13

regarding an alleged inappropriate touching incident involving the victim, J.S., and a boy at her school, D.S.  (Dkt. 4 at 13.)  The defense sought to cross-examine the victim and other witnesses about the victim's accusation against D.S. to show that the victim had accused another person of similar misconduct.  (*See* Dkt. 19, Ex. 3 at 548-573.)  The trial court excluded the proffered evidence, ruling that the use of that evidence would constitute impeachment on a collateral matter and would cause jury confusion.  (*See id.*, Ex. 3 at 573-74.)

The Confrontation Clause of the Sixth Amendment secures for the criminal defendant the right to cross-examine a witness against him in order to test the believability of the witness. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  As the Court recognized in *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  *Id*. at 316-17.  Nonetheless, the right to cross-examination is not without limits.  Trial courts have broad discretion to impose limits on cross-examination, based on evidentiary concerns such as those embodied in the Federal Rules of Evidence, including relevancy, harassment, prejudice, delay, duplicity, or confusion of the issues. *Delaware v. Van Arsdall*, 475 U.S. at 679.

Petitioner first raised an issue concerning the exclusion of testimony regarding D.S. in his pro se statement of additional grounds on direct appeal.  However, at that time petitioner presented the issue as one implicating his right to effective assistance of counsel.  Specifically, petitioner argued that counsel rendered ineffective assistance at trial by failing to gain admission of testimony regarding D.S.  (*See* Dkt. 19, Ex. 15 at 9.)  The Washington Court of Appeals rejected that claim, explaining its conclusion as follows:

> Erickson argues that his counsel was ineffective because he was not allowed to elicit testimony about an alleged touching incident that occurred between JS and a boy at school.  But counsel advocated for admission of the

REPORT AND RECOMMENDATION
PAGE - 14

testimony.  The trial court excluded it because there was insufficient evidence that the incident actually occurred.  Even if it had occurred, the allegations bore no similarity or relationship to JS's allegations against Erickson.

(*Id.*, Ex. 16 at 12.)

Petitioner attempted to raise the issue again in his personal restraint petition, but under a different legal theory; *i.e.*, that the trial court's refusal to allow such testimony violated his Sixth Amendment right to confront witnesses.  (*See id.*, Ex. 45 at 21.)  The Court of Appeals declined to consider the claim, concluding that the claim had previously been presented on direct appeal and that petitioner had made no showing that the interests of justice required allowing him to relitigate the claim.  (*See id.*, Ex. 47 at 4-5.)

The Court of Appeals, in rejecting petitioner's claim regarding the exclusion of testimony about D.S. on direct appeal acknowledged, in essence, that the exclusion constituted a reasonable limitation on the scope of cross-examination because the victim's allegations concerning D.S. bore no similarity or relationship to the victim's allegations against petitioner.  The decision of the state courts was consistent with clearly established federal law and petitioner identifies no United States Supreme Court authority which requires a different result.  Petitioner's federal habeas petition should therefore be denied with respect to his second ground for relief.

<u>Ground Three:  *Brady* Violation</u>

Petitioner asserts in his third ground for relief that his due process rights were violated when the state suppressed and willfully destroyed exculpatory and impeaching evidence.  (Dkt. 4 at 19.)  Petitioner complains that while executing a search warrant at his residence, the police failed to seize and/or catalogue a large number of pornographic DVDs which were discovered in a bedroom shared by the victim and her father, Shaun Erickson.  (*Id.* at 19-20.)  Petitioner maintains that if the jury had seen "the raw and explicit nature of these DVDs they would have

REPORT AND RECOMMENDATION
PAGE - 15

1   known where the alleged victim acquired her knowledge of what she described . . . the petitioner

2   had done to her." (*Id*. at 20.)

3       The prosecution has a constitutional duty to disclose to an accused all evidence that is

4   "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v.*

5   *Bagley*, 473 U.S. 667, 674 (1985) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The duty

6   to disclose encompasses both exculpatory evidence and impeachment evidence. *Strickler v.*

7   *Greene*, 527 U.S. 263, 280 (1999) (citing *Bagley*, 473 U.S. at 676).

8       The Constitution also imposes on the states a duty to preserve evidence, but that duty is

9   limited to "evidence that might be expected to play a significant role in the suspect's defense."

10  *California v. Trombetta*, 467 U.S. 479, 488 (1984). In order to meet this standard of

11  constitutional materiality, "evidence must both possess an exculpatory value that was apparent

12  before the evidence was destroyed, and be of such a nature that the defendant would be unable to

13  obtain comparable evidence by other reasonably available means." *Id*. at 489. "[U]nless a

14  criminal defendant can show bad faith on the part of the police, failure to preserve potentially

15  useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488

16  U.S. 51, 58 (1988)

17      Petitioner presented his *Brady* claim to the Washington Court of Appeals in his statement

18  of additional grounds on direct appeal. The Court of Appeals rejected the claim, explaining its

19  conclusion as follows:

20          Erickson contends that the State had a duty to collect the digital video disk
        (DVD) that JS was watching when she disclosed the abuse to Shaun and to
21      provide that evidence to him. Erickson claims that the failure to do so amounts to
        a <u>Brady</u> violation and a violation of his right to due process. The failure to
22      disclose material evidence favorable to the defense violates an accused's due
        process rights if the evidence is material to guilt or innocence. <u>See</u> <u>Brady</u>, 373
23      U.S. at 87. No <u>Brady</u> or due process violation occurred here. Erickson neither

REPORT AND RECOMMENDATION
PAGE - 16

alleges nor establishes that the State suppressed or destroyed evidence. The record indicates that no DVDs were removed from Erickson's home. The defense found the DVD it believed JS had been watching. And while taking the position that the DVD was not available to him because of the State's actions, Erickson also challenges defense counsel's failure to introduce the DVD as evidence. The record shows that counsel decided against presenting the actual footage to the jury due to its graphic and offensive nature. We are unpersuaded by Erickson's argument that this decision was unreasonable. Nor was he prevented from effectively arguing to the jury that JS's memory was tainted by pornography.

(Dkt. 19, Ex. 16 at 11-12 (footnote omitted).)

The Court of Appeals reasonably rejected petitioner's *Brady* claim. The record appears to confirm that the DVDs were never seized by the police and were therefore never in the possession of the state. There is no evidence that state officials acted in bad faith in failing to secure the evidence, and the record indicates that petitioner's counsel was able to obtain from another source the evidence which petitioner contends was suppressed and destroyed. (*See id*., Ex. 1 at 13-16, Ex. 5 at 761-64.) Petitioner has established no violation of a constitutional right and, thus, his federal habeas petition should be denied with respect to his third ground for relief.

<u>Ground Four:  SSOSA Evaluation</u>

Petitioner asserts in his fourth ground for relief that his rights to assistance of counsel, due process, and equal protection were violated when funding for a Special Sex Offender Sentencing Alternative (SSOSA) evaluation was denied by the public defender's office. (Dkt. 4 at 28.) Petitioner contends that the denial of funds for the proposed testing was contrary to the trial court's order that a SSOSA evaluation be done, and that it ultimately had an adverse affect on his sentence. (Dkt. 4 at 28-30.)

The Washington Court of Appeals considered the merits of petitioner's claim pertaining to the SSOSA evaluation in petitioner's personal restraint proceedings. The Court of Appeals rejected the claim, explaining its decision as follows:

REPORT AND RECOMMENDATION
PAGE - 17

Erickson contends that he was denied the effective assistance of counsel, due process of law, and equal protection because trial counsel requested, but was denied, funding for a sexual deviancy evaluation by the Office of Public Defense (OPD) to support his request for a Special Sexual Offender Sentencing Alternative (SSOSA).  He contends that had such an evaluation been performed, it is likely that the court would have imposed a SSOSA sentence.  He also suggests that the absence of the evaluation led the trial court to deny his request based on ineligibility.  He also claims that OPD's denial of funding created a "conflict of interest" between his counsel and the OPD and affected counsel's ability to advocate on his behalf.

The imposition of a SSOSA sentence is solely within the trial court's discretion.  State v. Frazier, 84 Wn. App. 752, 753, 930 P.2d 345 (1997).  But the trial court must actually consider the request for a SSOSA sentence and may not categorically refuse requests for SSOSA sentences or refuse such requests from certain classes of offenders.  State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005).  In considering a request for a SSOSA sentence, the trial court is to

> Consider whether the offender and the community will benefit from use of this alternative, consider whether the alternative is too lenient in light of the extent and circumstances of the offense, consider whether the offender has victims in addition to the victim of the offense, consider whether the offender is amenable to treatment, consider the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and consider the victim's opinion whether the offender should receive a treatment disposition under this section.

RCW 9.94A.670(4).  The court is also to give "great weight" to the victim's opinion about whether a SSOSA sentence should be imposed.  RCW 9.94A.670(4).

Here, there is nothing in the record to suggest that the absence of an evaluation had any bearing on the court's decision to deny his request or that the court abused its discretion in refusing to impose a SSOSA.  The court expressly considered the request, but denied it primarily based on its assessment that Erickson was unwilling to accept responsibility for his crime.  In light of Erickson's testimony denying any inappropriate sexual contact with the victim or any of his biological children, the court determined that his belated request for treatment in order to shorten his prison sentence appeared disingenuous.  Moreover, according to the record, counsel worked diligently to secure an evaluation and argued vigorously in favor of a SSOSA sentence.  Erickson does not explain how the denial of funding was the fault of his counsel, what counsel should have done, or how the alleged "conflict" with OPD affected her advocacy.

REPORT AND RECOMMENDATION
PAGE - 18

(Dkt. 19, Ex. 47 at 6-7.)

The record confirms that petitioner's counsel argued for the SSOSA sentence and that the trial court considered the request and ultimately denied it because it deemed such a sentence inappropriate under the facts of petitioner's case. (*See id.*, Ex. 8 at 1148-49). Petitioner offers nothing by way of evidence or argument in this proceeding to demonstrate that the denial of funding for the SSOSA evaluation had any impact on the sentencing decision or that the actions of the court or counsel in the sentencing process violated any constitutional principles. The state courts reasonably rejected the claim and petitioner's federal habeas petition should therefore be denied with respect to petitioner's fourth ground for relief.

<u>Ground Five:  Bill of Particulars</u>

Petitioner asserts in his fifth ground for federal habeas relief that his right to be informed of the nature and cause of the accusation against him was violated when the trial court denied his request for a bill of particulars. (*See* Dkt. 4 at 32.) Petitioner complains that he was accused of multiple acts within a wide date range, and he appears to argue that because he was never informed of the specific act or acts he was accused of, and/or convicted of, he was unable to prepare a proper defense, to pursue a proper appeal, or to protect himself from double jeopardy. (*See id.* at 32-34; Dkt. 3 at 27-29.)

The Sixth Amendment guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him. *See* U.S. Const. amend. VI; *see also*, *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.")

REPORT AND RECOMMENDATION
PAGE - 19

A charging document is sufficient to inform a defendant of the charges against him if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, (2) enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Adequate notice of the nature and cause of the offense may be provided through a source other than the primary charging document. *Sheppard v. Rees*, 909 F.2d, 1234, 1236, n. 2 (9th Cir. 1990). Notice may be provided by way of a complaint, an arrest warrant, or a bill of particulars. *Id*. Notice may even be provided during the course of trial by way of the prosecution's opening statement or through the presentation of substantial evidence. *See Stephens v. Borg*, 59 F.3d 932 (9th Cir. 1995).

Petitioner presented his claim regarding the denial of his motion for a bill of particulars to the Washington Court of Appeals in his personal restraint petition. The Court of Appeals rejected the claim, explaining its decision as follows:

> Erickson also claims that the trial court improperly denied his motion for a bill of particulars. He argues that, as a consequence of the trial court's ruling, he was "never informed of the act or acts he was accused and/or convicted of."
>
> A criminal defendant has a constitutional right to be informed of the nature and cause of the accusation against him to enable him to prepare a defense. State v. Bergeron, 105 Wn.2d 1, 18, 711 P.2d 1000 (1985). The purpose of a bill of particulars is to "amplify or clarify particular matters essential to the defense." State v. Holt, 104 Wn.2d 315, 321, 704 P.2d 1189 (1985).
>
> A bill of particulars is not required if the particulars are already in the charging document or if the information called for has been provided by the government in some other satisfactory form. State v. Noltie, 116 Wn.2d 831, 845, 809 P.2d 190 (1991). Whether or not to grant a request for a bill of particulars is a matter left to the discretion of the trial court. Noltie, 116 Wn.2d at 844.
>
> Erickson acknowledges that the charging document informed him that he was charged with first degree child molestation based on sexual contact with a specific victim, JS. The information did not include specific dates of the offense,

REPORT AND RECOMMENDATION
PAGE - 20

which JS could not testify to, but instead alleged that the crime occurred within a specified time frame.  Erickson was thus adequately informed of the nature and cause of the accusation against him.  It does not appear that there was any additional information to disclose in a bill of particulars.

Erickson apparently believes that had he received a bill of particulars, he would know "which of the multiple acts presented to the jury they unanimously agreed to and convicted him of."  He further asserts that he cannot know whether his conviction violates double jeopardy without knowing which specific act the jury relied upon.

The Double Jeopardy Clause protects against multiple punishments for the same offense.  <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); <u>see also</u> <u>State v. Calle</u>, 125 Wn.2d 769, 772, 888 P.2d 155 (1995).  Where, as here, the defendant is convicted of a single offense, double jeopardy is not implicated.  Also, contrary to Erickson's claim, a bill of particulars contains only clarifying information about the charges.  Even if the State had provided the document, it would not have shed any light on the jury's verdict.  Erickson's right to a unanimous jury verdict was protected because the jury was instructed that all jurors had to agree that the same underlying criminal act had been proved beyond a reasonable doubt.  <u>See</u> <u>State v. Petrich</u>, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).  As long as this unanimity instruction is given, the jury need not specify the act upon which it agrees.  <u>State v. Stark</u>, 48 Wn. App. 245, 251-52, 738 P.2d 684 (1987).

(Dkt. 19, Ex. 47 at 9-10.)  The Washington Supreme Court Commissioner agreed with the Court of Appeals' resolution of this claim.  (*See id*., Ex. 49 at 4-5.)

The state courts reasonably rejected petitioner's claim regarding the bill of particulars.  The record before this Court reveals that during pretrial proceedings, the defense asked the prosecution to state with specificity the incidents it would be relying on to prove the charge against petitioner. (Dkt. 19, Ex. 1 at 153.)  There was considerable discussion between the court and counsel during which petitioner's counsel expressed her concern that it was unclear to her the precise "touching" she was to be defending against.  (*See id*., Ex. 1 at 154-158.)  Petitioner's counsel then moved for a bill of particulars.  (*Id.*, Ex. 1 at 160.)  After hearing the argument of counsel, the trial court made the following ruling:

REPORT AND RECOMMENDATION
PAGE - 21

1
2

   Here we are in trial; the defense has interviewed the alleged victim; the State has interviewed the alleged victim; there has been a child interview with a DVD.

3
4
5

   I think that based upon the information that has been provided through the other formats, the specific acts, what the child is alleging has been asserted sufficiently that a bill of particulars is unnecessary at this time, and the defense would not be unduly surprised based upon all of the information that has been provided through those sources, as well as the interviews of collateral witnesses.

6

(*Id.*, Ex. 1 at 167.)

7

   The record before this Court supports the conclusion that petitioner had adequate notice

8

of the charge against him, and that double jeopardy principles are not implicated by the facts of

9

his case.  Accordingly, petitioner's federal habeas petition should be denied with respect to his

10

fifth ground for relief.

11

Ground Six:  Confrontation Clause

12

   Petitioner asserts in his sixth ground for relief that his rights to due process and to

13

confront witnesses against him were violated when prosecution witness Karen Skaggs testified

14

about hearsay statements that she was instructed not to discuss.  (Dkt. 4 at 36.)  Petitioner

15

contends that Ms. Skaggs, in testifying about those statements, implied an accusation of a prior

16

bad act.  (*Id.*)

17

   At issue in this claim is testimony by Ms. Skaggs about a 2002 incident which involved

18

petitioner bathing his five- or six-year-old daughter B.E., and statements petitioner made to Ms.

19

Skaggs after she confronted him about the bathing incident.  (*See* Dkt. 4 at 37.)  The trial court

20

ruled during pretrial proceedings that Ms. Skaggs could not testify about any statements made to

21

her by B.E., but that she could testify about the bathing incident and her confrontation with

22

petitioner following the incident, and that she could reiterate statements made to her by petitioner

23

during that confrontation.  (*See* Dkt. 19, Ex. 1 at 71-86.)

REPORT AND RECOMMENDATION
PAGE - 22

At trial Ms. Skaggs testified about the bathing incident and then the following exchange took place between the prosecutor and Ms. Skaggs:

> [PROSECUTOR]:     So later that evening at some point you were able to speak to the defendant alone?
>
> [MS. SKAGGS]:     Yes.
>
> [PROSECUTOR]:     After you confront him with what [B.E.] told you, what is his reaction?
>
> [MS. SKAGGS]:     He told her that she wasn't telling the truth; that he was just having a bath with her; that it was very natural; that he [sic] was important that young girls see their fathers naked; that they learn sexuality from their parents –

(*Id*., Ex. 6 at 835-36.)

Petitioner's counsel moved for a mistrial, arguing that Ms. Skaggs was not supposed to talk about the conversation she had with B.E, and that her testimony that petitioner told her the girl wasn't telling the truth implied that a conversation had taken place.  (*See id*., Ex. 6 at 836.) The trial court ultimately concluded that the witness had not violated its order in limine:

> [T]he witness's statement that Mr. Erickson said that what the little girl said was not true, probably shouldn't have been said, but it doesn't matter because what was excluded were [B.E.]'s statements.  [B.E.]'s statements still have not been referenced by the witness, and I specifically said that the witness may talk about Mr. Erickson's statements.

(Dkt. 19, Ex. 6 at 837.)  At the request of petitioner's counsel, the Court advised the jury that Ms. Skaggs's statement that petitioner "said that what [B.E.] had said was not true" was stricken and the jury was instructed to disregard that statement.  (*Id*., Ex. 6 at 839.)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a

REPORT AND RECOMMENDATION
PAGE - 23

witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."   Nontestimonial hearsay statements, though subject to traditional limitations on hearsay evidence, are not subject to the Confrontation Clause, because only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."   *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51)).

The Supreme Court has not provided a comprehensive definition of "testimonial," but the Court noted in *Crawford* that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."   *Crawford*, 541 U.S. at 68.   Subsequent to *Crawford*, the Supreme Court announced a "primary purpose" test for use in determining whether a particular statement is testimonial or non-testimonial.   *See Ohio v. Clark*, 135 S.Ct. 2173, 2179-80 (2015).   The Court explained in *Clark* that "under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial."   *Id*. at 2180-81.

The state courts did not address any claim that petitioner's rights under the Confrontation Clause were violated by the admission of Ms. Skaggs's allegedly improper testimony.[6] However, such a claim is easily resolved here because it is clear that the alleged hearsay statement, that of B.E. purportedly admitted through the testimony of Ms. Skaggs, was not testimonial in nature.   The conversation between B.E. and Ms. Skaggs occurred after B.E. had gotten out of the bathtub while Ms. Skaggs was drying B.E. off with a towel.   (*See* Dkt. 19, Ex. 6

---

[6]   The Washington Court of Appeals addressed petitioner's claim regarding Ms. Skaggs's allegedly improper testimony on direct appeal, but the claim was at that time presented as a part of a prosecutorial misconduct claim.   (*See* Dkt. 19, Ex. 15 at 12 (Ground 3).)   The Court of Appeals rejected the claim on the grounds that the challenged testimony did not contravene the trial court's pretrial ruling because the trial court had excluded the substance of B.E.'s statements but not petitioner's admissions.   (*Id*., Ex. 16 at 13.)

REPORT AND RECOMMENDATION
PAGE - 24

at 834-35.)  Ms. Skaggs later confronted petitioner with what B.E. had told her.  (*Id.*, Ex. 6 at 836-37.)  It was at that point that petitioner allegedly made the statement about B.E. not telling the truth.  It is clear that the primary purpose of B.E.'s statement to Ms. Skaggs was not testimonial and, thus, petitioner's claim challenging the admission of this testimony does not implicate Sixth Amendment concerns.  (*Id.*, Ex. 6 at 837.)

To the extent petitioner contends that his due process rights were violated by Ms. Skaggs's testimony, his claim also fails.  The challenged testimony related only to petitioner's own statement, not to [B.E.]'s statement, and the testimony therefore did not violate the trial court's pretrial order nor did it constitute hearsay.  *See* Washington Evidence Rule 801(d)(2) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement.").  Moreover, the trial court specifically instructed the jury to disregard the portion of Ms. Skaggs's testimony at issue here and jurors are presumed to follow such instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

In sum, plaintiff fails to establish that the challenged testimony violated his federal constitutional rights or, in any event, that the testimony "had substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Petitioner's federal habeas petition should therefore be denied with respect to his sixth ground for relief.

<u>Ground Seven:  Admission of Improper Evidence</u>

Petitioner asserts in his seventh ground for relief that his due process rights were violated when Karen Skaggs testified about sexually explicit images she found on petitioner's shared computer.  (Dkt. 4 at 44.)  Petitioner contends that this testimony constituted improper evidence

REPORT AND RECOMMENDATION
PAGE - 25

of a common scheme or plan.  (*Id.*)

It is well established that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990).  The Supreme Court emphasized in *Estelle v. McGuire*, 502 U.S. 62 (1991), that it is not the province of federal habeas courts to re-examine state court conclusions regarding matters of state law and that a federal court, in conducting habeas review "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Id.* at 67-68.  Thus, state court procedural and evidentiary rulings are not subject to federal habeas review unless such rulings "violate[] federal law, either by infringing upon a specific constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  *See also*, *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  When considering whether erroneously admitted evidence rendered a trial fundamentally unfair, the federal habeas court must determine whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht*, 507 U.S. at 637.

Petitioner's challenge to the admission of Ms. Skaggs's testimony about the computer images was raised on direct appeal by petitioner's appellate counsel.  The Washington Court of Appeals upheld the trial court's evidentiary ruling:

> Contrary to Erickson's argument, the record shows that the trial court admitted no evidence that he possessed sexually explicit images.  Because of the inflammatory nature of the evidence, the court excluded any reference to pornography and allowed Skaggs to testify only generically about the images to provide context for Erickson's admissions.  Skaggs's testimony had probative value primarily because of Erickson's statements.  According to Skaggs, Erickson readily admitted to bathing with his daughter, but maintained that it was appropriate and important for children to see their parents naked so they can learn about sexuality.  Erickson also admitted to possessing the images, but insisted

REPORT AND RECOMMENDATION
PAGE - 26

there was nothing wrong with doing so and mentioned the NAMBLA organization. Erickson does not argue that his admissions should have been excluded. Nor does he challenge the trial court's determination that the views he expressed were highly relevant. See ER 801(d)(2) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement."); see also 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 801.35, at 389 (5th ed.2007) (A party's own statement is admissible if it "is in some way inconsistent with [his] position at trial.").

The trial court explained that Erickson's incriminating statements were relevant and probative but not the images on the computer. We conclude the trial court properly exercised its discretion when it limited Skaggs's testimony and excluded any testimony about the content of the images and Skaggs's call to police to report them.

(Dkt. 19, Ex. 16 at 8-9.)

Despite petitioner's efforts to frame his seventh ground for relief as a federal constitutional claim, petitioner's challenge to the trial court's decision to allow limited testimony referring to the images Ms. Skaggs found on petitioner's computer is essentially a state law claim. Petitioner argues in his memorandum in support of his petition that the state court's decision on this issue was contrary to a host of state court decisions. (*See* Dkt. 3 at 43-44.) However, that is not the test on federal habeas review. A petitioner on federal habeas review is entitled to relief only if he can demonstrate that the decision of the state courts was contrary to clearly established federal law. Petitioner's argument only serves to emphasize that his seventh ground for relief involves matters of state law and not federal law.

Petitioner makes no showing that the admission of Ms. Skaggs's limited testimony concerning the computer images rendered his trial fundamentally unfair. Accordingly, petitioner's federal habeas petition should be denied with respect to his seventh ground for relief.

<u>Ground Eight:  Ineffective Assistance of Counsel</u>

Petitioner asserts in his eighth ground for relief that he was denied his right to effective

REPORT AND RECOMMENDATION
PAGE - 27

assistance of trial and appellate counsel.  (Dkt. 4 at 46-54.)  Specifically, petitioner contends that his trial counsel's performance fell below an objective standard of reasonableness when counsel: (1) failed to properly investigate the case; (2) failed to call any medical experts to testify at trial; (3) convinced petitioner to go to trial based on untenable grounds; and, (4) allowed the other grounds identified in this federal habeas petition to occur.  (*Id*. at 47.)  Petitioner further complains that his appellate counsel failed to raise many of the issues asserted in this petition. (*Id*. at 54.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Id*. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy.  *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

REPORT AND RECOMMENDATION
PAGE - 28

1   would have been different.   A reasonable probability is a probability sufficient to undermine

2   confidence in the outcome." *Id*. at 694.  The reviewing court need not address both components

3   of the inquiry if an insufficient showing is made on one component.  *Id*. at 697.

4         While the Supreme Court established in *Strickland* the legal principles that govern claims

5   of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate

6   whether defense counsel's performance fell below the *Strickland* standard.  *Harrington*, 131 S.

7   Ct. at 785.  Rather, when considering an ineffective assistance of counsel claim on federal habeas

8   review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

9   was unreasonable." *Id*.  As the Supreme Court explained in *Harrington*, "[a] state court must be

10  granted a deference and latitude that are not in operation when the case involves review under

11  the *Strickland* standard itself." *Id*.

12        *1.     Failure to Investigate*

13        Petitioner first asserts that his counsel failed to properly investigate his case after the

14  defense investigator left abruptly in the middle of the case.  (*See* Dkt. 4 at 47-48.)  Petitioner

15  complains that he provided counsel with a list of 12 people whom he thought might have

16  relevant information about the case, but counsel failed to contact any of them.  (*Id*.)  Petitioner

17  also complains that he personally brought a character witness to court, but counsel failed to call

18  that individual to testify.  (*Id.* at 48.)

19        The Court of Appeals rejected this portion of petitioner's ineffective assistance of counsel

20  claim in petitioner's personal restraint proceedings, ruling as follows:

21              Erickson also alleges that he was denied effective representation of
            counsel because counsel failed to hire a new defense investigator once the
22          investigator stopped working on his case and failed to follow up on a list of 12
            potential witnesses he provided.  Erickson fails to identify the 12 witnesses.
23          Although he provides voluminous attachments in support of his petition, these

REPORT AND RECOMMENDATION
PAGE - 29

attachments do not include the declarations of any witnesses describing the substance of the proposed testimony.  Nor does he specifically explain how he was prejudiced by the absence of a defense investigator during some part of the case.

(Dkt. 19, Ex. 47 at 7.)   The Washington Supreme Court Commissioner agreed with the conclusion of the Court of Appeals.  (*Id.*, Ex. 49 at 3.)

Petitioner offers nothing in these proceedings to demonstrate that the conclusion of the state courts was unreasonable.  In the absence of any specific information identifying the potential witness and describing their proposed testimony, it is impossible to conclude that counsel's performance was deficient or that petitioner suffered any prejudice as a result of the alleged deficiencies.  Petitioner's federal habeas petition should therefore be denied with respect to this portion of his eighth ground for relief.

### 2.    *Failure to Retain Experts*

Petitioner also asserts that his counsel rendered ineffective assistance by failing to call a medical or psychological expert to testify on petitioner's behalf.  (Dkt. 4 at 48-49.)   More specifically, petitioner complains that counsel failed to call a medical expert to refute the testimony of the State's medical expert.  (*Id.* at 48.)  He also complains that counsel failed to call a child psychologist to prepare for the testimony of Collette Dahl, the forensic nurse examiner who examined the victim, J.S., and Carolyn Webster, the forensic child interviewer who interviewed J.S.  (*Id.* at 49.)

The Court of Appeals rejected this portion of petitioner's ineffective assistance of counsel claim in petitioner's personal restraint proceedings, ruling as follows:

Erickson also contends that counsel should have retained a medical expert. However, Erickson admits that while a nurse testified on behalf of the State, there were no physical findings of abuse, which was not inconsistent with the victim's

REPORT AND RECOMMENDATION
PAGE - 30

testimony.  Since there was no medical evidence for a defense expert to respond to, it is unclear what a defense expert would have contributed to the case. Erickson also claims that counsel should have retained an expert in child psychology to testify about the suggestibility of children and the possible effects of JS's exposure to pornography.  But here again, there is nothing in the record to suggest that there was available expert testimony that would have supported his theory of the case.  In any event, counsel was not prevented from making these arguments and did, in fact, do so.  The nature and suggestibility of children is not outside the realm of common experience and the jury was fully able to consider Erickson's argument that JS was confused between what she viewed and what she experienced.

Dkt. 19, Ex. 47 at 7-8.)   The Washington Supreme Court Commissioner agreed with the conclusion of the Court of Appeals.  (*Id.*, Ex. 49 at 3-4.)

Once again, petitioner offers nothing in these proceedings to demonstrate that the conclusion of the state courts was unreasonable.  The record before this Court is devoid of any evidence suggesting that the proposed expert testimony would have altered in any way the outcome of petitioner's trial.  Petitioner's federal habeas petition should therefore be denied with respect to this portion of his eighth ground for relief.

### 3.    *Decision to go to Trial*

Petitioner next asserts that his counsel convinced him to go to trial based on untenable grounds.  (Dkt. 4 at 49.)  Petitioner maintains that counsel convinced him that if he proceeded to trial they could get him the same "one year and SSOSA deal" if they lost as was offered by the prosecutor during plea negotiations.  (*Id.*)  Petitioner complains that this turned out not to be true because the public defender's office denied funding for the SSOSA evaluation.  (*Id.*)

The Court of Appeals rejected this portion of petitioner's ineffective assistance of counsel claim in petitioner's personal restraint proceedings, ruling as follows:

Erickson also alleges that his lawyer negligently counseled him to reject the State's plea offer of "one year and SSOSA" because he would be eligible to receive the same sentence if he lost at trial.  He claims that counsel's advice was

REPORT AND RECOMMENDATION
PAGE - 31

1    flawed because he was denied funding for a sexual deviancy evaluation which led

2    the court to deny his request for a SSOSA.  He thus contends that his counsel
     misrepresented the risks of going to trial.

3            . . . .

4            Erickson has provided no evidence beyond his own unsupported and self-
     serving assertions about the existence or substance of a favorable plea offer.

5    Likewise, there is no evidence that his counsel advised him to reject such an offer,
     or that he was otherwise inclined to accept it.  In short, he cannot meet his burden

6    of demonstrating that trial counsel failed to "actually and substantially" assist him
     in the plea process.  State v. Osborne, 102 Wn.2d 87, 99, 684 P.2d 683 (1984).

7

8    (Dkt. 19, Ex. 47 at 8-9.)   The Washington Supreme Court Commissioner concurred with the

9    decision of the Court of Appeals.  (Id., Ex. 49 at 4.)

10           Petitioner offers no evidence in these proceedings that the state made the plea offer which

11   petitioner claims to have rejected.  The state courts reasonably rejected this part of petitioner's

12   ineffective assistance of counsel claim and petitioner's federal habeas petition should therefore

13   be denied with respect to this portion of his eighth ground for relief.

14           **4.      *Failure to Prevent Other Errors***

15           Petitioner asserts that in addition to the four specific instances of ineffective assistance of

16   counsel addressed above, his trial counsel also rendered ineffective assistance by allowing the

17   other errors alleged in his federal habeas petition to occur.[7]   (*See* Dkt. 4 at 49-50.)   This

18   contention is frivolous.

19           Petitioner complains that trial counsel was ineffective for failing to gain admission of

20   testimony regarding the touching incident involving D.S.  (*Id.* at 50.)  However, the record

21   makes clear that counsel attempted to gain admission of such evidence, but their efforts were

22

23   _____

        [7]  The state courts did not address this laundry list of alleged errors.

REPORT AND RECOMMENDATION
PAGE - 32

unsuccessful.  Petitioner contends that counsel should have utilized an exception set forth in RCW 9A.44.020, Washington's rape shield statute, to gain admission of the testimony.[8] However, the evidence at issue was not excluded under the rape shield statute, it was excluded because it was deemed to constitute impeachment on a collateral matter and was likely to cause jury confusion.  (*See* Dkt. 19, Ex. 3 at 574.)  Petitioner fails to demonstrate that the statutory provision he cites would have provided any viable avenue for admission of the challenged evidence.

Petitioner also complains that trial counsel failed to lodge a complaint about the "obvious" *Brady* violation involving the DVDs.  (Dkt. 4 at 50.)  However, the Washington Court of Appeals concluded on direct appeal that no *Brady* violation occurred.  Petitioner therefore cannot establish any prejudice arising out of counsel's failure to raise this issue.

Petitioner faults counsel for failing to obtain funds for a SSOSA evaluation.  (Dkt. 4 at 50.)  However, the record makes clear that counsel sought such funds but their request was denied.  Moreover, as explained above, the trial court considered the SSOSA request even absent the evaluation and concluded it was not appropriate in the circumstances of petitioner's case. Petitioner fails to demonstrate any prejudice arising out of this alleged error.

Petitioner complains that counsel failed to pursue the motion for mistrial "on all applicable grounds" after Karen Skaggs testified about hearsay statements that she was instructed not to discuss.  (*Id*.)  Petitioner asserts that counsel should have argued that the testimony implied an allegation of a prior bad act.  (*Id*.)  Petitioner fails to demonstrate that any additional

---

[8]  The exception, set forth in RCW 9A.44.020(4), provides as follows:

Nothing in this section shall be construed to prohibit cross-examination of the victim on the issue of past sexual behavior when the prosecution presents evidence in its case in chief tending to prove the nature of the victim's past sexual behavior, but the court may require a hearing pursuant to subsection (3) of this section concerning such evidence.

REPORT AND RECOMMENDATION
PAGE - 33

argument with respect to the motion for mistrial would have been any more persuasive than that provided by counsel.  Moreover, as noted above in the Court's discussion of petitioner's sixth ground for relief, the objectionable statement was stricken and petitioner fails to demonstrate any prejudice.

Petitioner complains as well that counsel failed to persuade the trial court to exclude testimony from Ms. Skaggs regarding sexually explicit images found on petitioner's home computer.  However, as explained above, the trial court excluded any references to pornography and permitted Ms. Skaggs to testify only that she saw images of concern on the computer that led her to confront petitioner.  Petitioner offers no suggestion of what he believes counsel might have done differently to achieve a more favorable result.

Finally, petitioner contends that counsel should have objected to what petitioner believes was "flagrant misconduct" by the prosecutor during closing argument.  However, as will be explained in more detail below, petitioner fails to establish that the prosecutor engaged in any misconduct during closing argument.  Petitioner once again fails to demonstrate either deficient performance or prejudice.

### 5.   *Ineffective Assistance of Appellate Counsel*

Petitioner also asserts that he was denied effective assistance of appellate counsel based on counsel's failure to raise a number of the "obvious" issues presented in petitioner's federal habeas petition.  (Dkt. 4 at 51.)   Petitioner contends that if counsel had raised the issues petitioner believes they missed, his conviction would have been reversed.  (*Id*. at 54.)

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right from his criminal conviction the assistance of counsel.  *Douglas v. California*, 372 U.S. 353 (1963).  This right to counsel comprehends the right to effective assistance of counsel.  *Evitts v.*

REPORT AND RECOMMENDATION
PAGE - 34

*Lucey*, 469 U.S. 387, 396 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the two-prong test set forth in *Strickland*.  *See, e.g., Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

While petitioner faults his appellate counsel for failing to raise certain issues on direct appeal, petitioner had the opportunity to raise them, and did raise them, on collateral review. Thus, as respondent points out, the Court of Appeals had a chance to consider those claims despite appellate counsel's failure to raise them earlier.  The Court of Appeals rejected each of the claims and, thus, it cannot be said that petitioner was prejudiced by appellate counsel's failure to raise the claims on direct review.  Petitioner's federal habeas petition should be denied with respect to his ineffective assistance of appellate counsel claim.

<u>Ground Nine:  Prosecutorial Misconduct</u>

Petitioner asserts in his ninth ground for relief that the prosecutor committed misconduct in closing argument when she referenced testimony that was not produced at trial and when she stated her opinion as to guilt and as to the credibility of witnesses.  (Dkt. 4 at 56.)  Petitioner also contends that the prosecutor committed misconduct when she allowed the *Brady* violation to occur, when she elicited excluded testimony from Karen Skaggs, when she inappropriately coached witnesses, and when she allowed the other issues raised in this federal habeas action to occur.  (*Id*. at 57-58.)

When a prosecutor's conduct is placed in question, unless the conduct impermissibly infringes on a specific constitutional right, the standard of review is the "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).  To obtain relief on a claim of prosecutorial misconduct, a federal habeas petitioner must do more than show that "the

REPORT AND RECOMMENDATION
PAGE - 35

prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-81.  A petitioner must demonstrate that the allegedly improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly*, 416 U.S. at 643).

In order to assess a claim that a prosecutor's comments rendered a trial so fundamentally unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987). A reviewing court must keep in mind that during closing argument a prosecutor has wide latitude to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

On federal habeas review, prosecutorial misconduct which rises to the level of a constitutional violation nonetheless provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht*. *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).  Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637.

### 1.    *Closing Argument*

Petitioner first asserts that the prosecutor referenced testimony during closing argument that wasn't produced at trial.  Specifically, petitioner complains about the prosecutor's statement that J.S. "said that this would happen when Raina wasn't home."  (Dkt. 4 at 56.)  Petitioner contends that J.S. never said that in court or during the child interview, but a review of the transcript makes clear that J.S.'s testimony was consistent with the prosecutor's representation. J.S. testified as follows:

REPORT AND RECOMMENDATION
PAGE - 36

1   [PROSECUTOR]:       Was anybody else in the room?

2   [J.S.]:  No.

3   [PROSECUTOR]:       Do you know when this happened, where was Raina?  Was
    she home?

4   [J.S.]:  No.

5   [PROSECUTOR]:       No, she wasn't home?  How about [petitioner's two
    children with Raina]?

6

7   [J.S.]:  No.

8   (Dkt. 19, Ex. 3 at 526-27.)  There was clearly evidentiary support for the prosecutor's argument

9   and, thus, petitioner's prosecutorial misconduct claim is frivolous is this regard.

10      Petitioner next asserts that the prosecutor vouched for the veracity of state's witnesses

11  and offered her personal opinion regarding petitioner's guilt.  (Dkt. 4 at 56-57.)  Petitioner points

12  to statements made by the prosecutor during closing argument emphasizing that the victim and

13  other State's witnesses were telling the truth and that defendant was indeed guilty of the offense

14  with which he was charged.  (*Id.*)  The Washington Court of Appeals, on direct appeal, rejected

15  petitioner's claim that the prosecutor engaged in misconduct when she expressed her personal

16  beliefs in closing argument, concluding that "[p]roperly viewed in the context of the argument as

17  a whole, these were arguments based on the evidence, not on the prosecutor's personal

18  opinions."  (Dkt. 19, Ex. 16 at 13.)  The state court reasonably rejected this claim.

19      The Ninth Circuit has identified two situations in which improper vouching typically

20  occurs:  (1) the prosecutor places the prestige of the government behind a witness by expressing

21  his personal belief in the veracity of the witness, or (2) the prosecutor indicates that information

22  not presented to the jury supports a witness's testimony.  *United States v. Hermanek*, 289 F.3d

23  1076, 1098 (9th Cir. 2002) (citing *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998)).

REPORT AND RECOMMENDATION
PAGE - 37

Improper vouching also occurs when a prosecutor implicitly vouches for a witness's credibility. *Hermanek*, 289 F.3d at 1098 (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985)).   While petitioner identifies a few sentences in the prosecutor's argument which he believes were objectionable, he fails to demonstrate that the challenged statements were in any way improper.

Petitioner first complains about the following statements by the prosecutor:  "She is not making this up.  It is because [JS] told you the truth.  She told Carolyn Webster the truth about what he did to her."  (*See* Dkt. 4 at 56.)  A review of the transcript reveals that the prosecutor was at this point in the argument discussing the victim's credibility and identifying for the jury the evidence presented at trial relevant to the jury's assessment of the victim's credibility.  (*See* Dkt. 19, Ex. 7 at 1072-74.)  This was proper argument based on the evidence.

Petitioner next identifies two objectionable passages from the prosecutor's rebuttal argument.  Specifically, petitioner claims that the prosecutor's argument that "[h]e is guilty of this crime.  He is guilty beyond a reasonable doubt[,] " was improper as was her argument that "[t]he fact is that truth is stranger than fiction.  You cannot make this up.  These witnesses did not make this up.  The defendant is guilty."  (*See* Dkt. 4 at 58 and Dkt. 19, Ex. 7 at 1113-14.) Once again, when these statements are placed in context, it is clear that the prosecutor was simply arguing that, based on the evidence presented at trial, the jury should convict petitioner. This was proper argument as well.

The record makes clear that the prosecutor did not place the prestige of the government behind the witnesses through personal assurances of truthfulness, nor did she suggest that the testimony of State's witnesses was supported by information not presented to the jury.  The challenged statements did not constitute improper vouching.  Petitioner's federal habeas petition

REPORT AND RECOMMENDATION
PAGE - 38

should therefore be denied with respect to this portion of his prosecutorial misconduct claim.

### 2.   *Brady Violation*

Petitioner next complains that the prosecutor committed misconduct when she allowed the *Brady* violation to occur.  (Dkt. 4 at 57.)  As explained above, there was no *Brady* violation in this case and, thus, this portion of petitioner's prosecutorial misconduct claim fails.

### 3.   *Eliciting Improper Testimony*

Petitioner contends that the prosecutor committed misconduct in eliciting from witness Karen Skaggs that the trial court had excluded.  (*Id.*)  This claim is in reference to the testimony addressed in ground six above.  (Dkt. 4 at 57.)  The Court of Appeals rejected this portion of petitioner's prosecutorial misconduct claim on direct appeal:

> Erickson alleges that during Skaggs's testimony, the prosecutor referred to BS's statements that had been excluded.  However, the prosecutor did not ask about any statements made by BS.  She asked only about Erickson's reaction to Skaggs. Even though Skaggs volunteered that Erickson remarked that his daughter "wasn't telling the truth," as the court noted, this testimony did not contravene the court's ruling.  6 RP (May 10, 2010) at 836.  The court excluded the substance of BS's statements but not Erickson's admissions.

(Dkt. 19, Ex. 16 at 13.)

As it is clear that the testimony in question did not violate the trial court's order in limine excluding certain testimony, this portion of petitioner's prosecutorial misconduct claim necessarily fails.

### 4.   *Coaching Witnesses*

Petitioner contends that the prosecutor *may* have coached witnesses.  (Dkt. 4 at 57-58.) He cites to a response from prosecution witness Katherine Vangog to a question posed by the prosecutor where Ms. Vangog states "I have to say it the *right way*.  That kids should learn about sex early on and the younger they are the better."  (*Id.* at 57 (emphasis by petitioner).)  Petitioner

REPORT AND RECOMMENDATION
PAGE - 39

questions who told this witness the "right way" to say this.

The statement at issue was a part of an exchange between the prosecutor and Ms. Vangog, the victim's grandmother, concerning conversations she had had with petitioner:

Q:      Had the defendant made statements to you with regard to his thoughts on sexuality when it comes to children?

MS. KEMP ROGERS [Defense counsel]:      Objection, Your Honor.

THE COURT:          Overrruled.

Q:      Do you want me to repeat –

A:      He made some what I felt were inappropriate comments.

MS. KEMP ROGERS:          Objection, Your Honor, calls for a conclusion.  The question was: "Has he made any" -- "Has he made comments, etc., with regard to children?"  That calls for a yes or no answer, Your Honor -- begging the Court's pardon?

THE COURT: I believe the question calls for a yes or no answer.

A:      Yes.

Q:      What were the statements?

A:      One was that he felt that the younger -- I have to say it the right way.

That kids should learn about sex early on and the younger they are, the better.  That was one of them.

(Dkt. 19, Ex. 4 at 635.)

Nothing in this exchange suggests that the prosecutor improperly "coached" this witness. It is certainly the case that at trial both prosecutors and defense counsel are tasked with advising their witnesses of the parameters of permissible testimony based on the trial court's rulings.  In this instance, as respondent points out, the witness's comment about having to "say it the right way" was likely a reaction to previous objections from defense counsel to the manner in which

REPORT AND RECOMMENDATION
PAGE - 40

the witness answered the prosecutor's questions.  (*See id.*, Ex. 4 at 634-35.)  The lone comment identified by petitioner in no way establishes any misconduct on the part of the prosecutor.

Petitioner speculates that coaching must have occurred because multiple witnesses testified that he had made comments to the effect that "kids should learn sex early on" when he, in fact, never said this to anyone.  (Dkt. 4 at 58.)  Petitioner also suggests that there is evidence of coaching in a letter apparently presented to the court at the time of sentencing and purportedly written by JS.  (*Id.*)  Petitioner contends that the letter contained wording too advanced for a first grader and he speculates that someone instructed JS on what to say.  (*Id.*)  Finally, petitioner notes that during the child interview, JS said to the interviewer:  "I forgot what I was suppose to say."  (*Id.*)  This Court was unable to locate this exact passage in the transcript of the victim's interview.  While it is true that the victim responded to several of the interviewer's questions with "I forgot," she also explained, upon further questioning, that she gave this response because she didn't want to talk about what had happened, not because she had actually forgotten.  (See Dkt. 19, Ex. 9 at 6.)

Petitioner offers only speculation but no actual evidence that the prosecutor coached the state's witnesses.  This portion of petitioner's prosecutorial misconduct claim therefore fails as well.

### 5.    *Failure to Prevent Other Errors*

In addition to the specific complaints addressed above, petitioner also asserts that the prosecutor, as a "quasi judicial officer," should not have allowed any of the other errors asserted in this habeas action to occur.  (Dkt. 4 at 58.)  This assertion is too vague to warrant extended discussion.  Petitioner has not established any misconduct on the part of the prosecutor in this case and certainly no misconduct which might conceivably have had a prejudicial effect on the

REPORT AND RECOMMENDATION
PAGE - 41

outcome of petitioner's trial.  Accordingly, petitioner's ninth ground for relief should be denied in its entirety.

Ground Ten:  Judicial Misconduct

Petitioner asserts in his tenth ground for relief that the trial judge committed misconduct when he ruled against the admission of testimony pertaining to D.S., when he issued an order that caused the destruction of exculpatory and impeaching evidence, when he failed to order the public defender's office to fund the SSOSA evaluation, when he denied the defense request for a bill of particulars, when he intentionally misconstrued the testimony of Karen Skaggs in order to turn inadmissible hearsay into "petitioner's own admissions to Ms. Skaggs," when he failed to exclude the allegation about sexually explicit images Ms. Skaggs purportedly found on petitioner's computer, when he allowed defense counsel to be ineffective, when he allowed the prosecutor to commit misconduct, and when he improperly considered petitioner's decision to exercise his constitutional right to trial by jury in determining petitioner's sentence.  (*See* Dkt. 4 at 59-61.)

Respondent correctly asserts that a majority of this claim is simply a rehash of claims asserted elsewhere in petitioner's petition, and that the only new issue is petitioner's claim that the trial court, in its sentencing decision, penalized petitioner for exercising his right to trial.  The Court will address only that issue.

The trial court made the following statement when imposing sentence on petitioner:

> The State has recommended the high end and the defense has requested a [S]SOSA with incarceration for 12 months and suspension of the balance of the sentence.
>
> I did sit through the trial, obviously, and I am very familiar with the facts of the case, and I will state from the outset that I don't consider any sentencing alternative to be laughable under any situation.  I think that the legislature has

REPORT AND RECOMMENDATION
PAGE - 42

given judges one of the few areas of discretion they have in allowing the [S]SOSA – I'm sorry, allowing the sentencing alternatives, whether it to be under the parenting alternative or the drug alternative and/or the special sex offender alternative, and I have often given great consideration to those sentencing alternatives, but I cannot find this is one of those cases.

I, first of all, having sat through the trial and observed young [J.S.] and the courage it took for her to testify, and the impact that this has had on her as an extremely vulnerable victim.

Second, the complete lack of remorse and the disingenuity of "I didn't do anything and I don't have a problem, but if it will shorten my sentence, sure, I will take a sentencing alternative," and to me that is just such an abuse of the system and what was intended by the sentencing alternatives

It may be true, Ms. Rogers-Kemp, that addicts don't recognize that they have a problem, but when addicts don't recognize they have a problem, and they deny that they have done anything wrong, and we have a whole series of events here, not just with this victim but his conduct with other uncharged offenses and victims, including his own daughter, I see a complete lack of any acceptance of responsibility – not just a denial of a very serious illness or mental health issue or sexual deviancy issues, but exploitation of such young children is completely unacceptable in our society, and given those factors, not only do I think that a [S]SOSA is not appropriate in this case, but that the high end of the sentence is.

(Dkt. 19, Ex. 8 at 1148-49.)

The Supreme Court has made clear that "while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." *United States v. Goodwin*, 457 U.S. 368, 372 (1982).

In *Goodwin*, the Supreme Court explained as follows:

The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive. Given the severity of such a presumption, however—which may operate in the absence

REPORT AND RECOMMENDATION
PAGE - 43

1  of any proof of an improper motive and thus may block a legitimate response to
2  criminal conduct—the Court has done so only in cases in which a reasonable
   likelihood of vindictiveness exists.

3  *Id.* at 372-73.

4       The Supreme Court has recognized a presumption of vindictiveness in the sentencing

5  context only in instances where a defendant has received an increased sentence following a

6  successful appeal.  *See id.* at 373-77 (citing *North Carolina v. Pearce*, 395 U.S. 711 (1969);

7  *Blackledge v. Perry*, 417 U.S. 21 (1974)).

8       The Washington Court of Appeals rejected petitioner's judicial misconduct claim in

9  petitioner's personal restraint proceedings:

10          Erickson also raises claims of judicial misconduct.  However, with the
    exception of one issue, his arguments merely recast arguments rejected on direct
11   appeal.  The single new issue he asserts is a claim that the court penalized him for
    exercising his right to a jury trial by denying his request for a SSOSA sentence on
12   that basis.  He points to the court's comment at sentencing, observing the courage
    it required for the young victim to testify and stating that in imposing the
13   sentence, the court took into account the "impact that this has had on her as an
    extremely vulnerable victim."

14          The court's comments do not indicate that the court punished Erickson for
15   exercising his right to trial.  The sentencing court's consideration of the impact on
    victims and their survivors is consistent with legislative intent.  See State v.
16   Crutchfield, 53 Wn. App. 916, 927, 771 P.2d 746 (1989).  Here, the court's
    comments reflected its consideration of the effect of the crime on the victim and,
17   in emphasizing the vulnerability of the victim, the nature of the crime.  These
    considerations were entirely appropriate.
18

19  (Dkt. 19, Ex. 47 at 11.)   The Washington Supreme Court Commissioner agreed with the

20  conclusion of the Court of Appeals.  (*Id.*, Ex. 49 at 5.)

21       Petitioner fails to demonstrate that the decision of the state courts was contrary to, or

22  constituted an unreasonable application of, clearly established federal law.  Petitioner, in support

23  of his claim that he was penalized for exercising his right to trial, cites in particular to the trial

REPORT AND RECOMMENDATION
PAGE - 44

court's comments about having sat through the trial and having observed the victim as she testified and the impact of events on "an extremely vulnerable victim." (Dkt. 4 at 61.) Petitioner contends that the only way to have prevented the victim from testifying would have been to not exercise his right to go to trial. (*Id*.)

However, it was appropriate for the trial court to take into account the impact of the offense on the victim. Petitioner's suggestion that the trial court's comments demonstrate that he was penalized for exercising his right to trial are frivolous. Petitioner demonstrates no entitlement to relief with respect to his claim of judicial misconduct and, thus, petitioner's federal habeas petition should be denied with respect to his tenth, and final, ground for relief.

<u>Certificate of Appealability</u>

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his federal habeas petition.

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further

recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 6, 2016**.

DATED this 12th day of April, 2016.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 46